**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

D & T CONSTRUCTION COMPANY,

                Plaintiff,

v.

                                      CIVIL CASE NO. 06-10533

MCVICKERS SHELBY, L.L.C.,           HON. MARIANNE O. BATTANI

                Defendant.

_____/

**OPINION AND ORDER GRANTING
<u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

**I.     INTRODUCTION**

Before the Court is defendant, McVickers Shelby, L.L.C. ("McVickers") Motion for

Summary Judgment (Doc. #14).  D&T Construction Company ("D&T") sued McVickers in an

attempt to prohibit it from utilizing a parking easement granted by Costco Wholesale

Corporation ("Costco").  D&T complains that McVickers's use of Costco's parking lot interferes

and trespasses upon an easement Costco granted to it.  McVickers seeks summary judgment,

contending D&T cannot bar the use of its easement based on the non-exclusive easement Costco

granted to D&T and that the claims are wholly unsupported by case law.

**II.     STATEMENT OF FACTS**

McVickers is an Illinois limited liability company and the owner of certain real property

located at 14991 Hall Road, Macomb County, Michigan.  McVickers purchased the property

from Bocci Salon, Inc., in March 2004, for $225,000 with the intention of constructing a

commercial retail building.  In addition to the $225,000 purchase price McVickers paid for the

1

property, McVickers spent a considerable sum for construction and development costs.  Overall,

McVickers claims it has invested approximately $1,000,000 for the purchase, development, and

construction of its commercial retail building.

According to D&T, it is one of Macomb County's largest real estate developers.  D&T

owns and has developed real property to the west and to the north of McVickers's parcel.  That

property is commonly referred to as the Shelby Town Center, which D&T describes as a $300

million live/work development that combines and features residential living and retail shopping

space.  Once completed, the Shelby Town Center is expected to include "400 town houses and

400 live work units—homes with attached storefront businesses—and 150,000 square feet of

retail space nearby."  Tenisha Mercer, *Shelby Town Center Takes Shape*, THE DETROIT NEWS,

Oct. 9, 2003, at 5B.

In September 2000, D&T and Costco entered into a Reciprocal Easement and

Development Agreement ("REDA").  The REDA granted D&T a perpetual, non-exclusive

easement for vehicular and pedestrian ingress, egress, and parking on Costco's parking lot.

REDA, at 3-4.

McVickers's construction and development of the Hall Road property began in

September 2005.  In March 2005, before construction began, McVickers and Costco entered into

a Reciprocal Easement Agreement ("REA"), pursuant to which McVickers obtained a

non-exclusive right to use approximately eleven parking spaces on Costco's property.  REA, at

4-5.  Pursuant to agreement, McVickers added five parking spaces to the parking lot as part of its

development.  According to McVickers, Costco and D&T have a non-exclusive right to use the

five additional spaces it created.

2

D&T filed a three count complaint against McVickers, alleging that McVickers's easement interferes with the quiet enjoyment of its easement on Costco's parking lot, that McVickers's use of its easement constitutes a private nuisance, and trespass upon, on its easement.

## III.   STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

As the United States Supreme Court has ruled:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. See Hager v. Pike County Bd. of Educ., 286 F.3d 366, 370 (6th Cir. 2002). "[T]he burden on the moving party may be discharged by 'showing' - that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

Once the moving party carries that burden, the burden then shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. FED. R. CIV. P. 56(e); Chao v. Hall Holding Co., 285 F.3d 415, 424 (6th Cir. 2002). "The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of

3

producing in turn evidence that would support a jury verdict." Anderson v. Liberty Lobby Inc., 477 U.S. 242, 256 (1986). The court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. See Hunt v. Cromartie, 526 U.S. 541, 549 (1999); Sagan v. U.S., 342 F.3d 493, 497 (6th Cir. 2003).

"A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of [the] essential elements of a cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984)(citation omitted)(quoting BLACK'S LAW DICTIONARY 881 (6th ed. 1979)). To create a genuine issue of material fact, the nonmovant must do more than present some evidence on a disputed issue.

> There is no issue for trial unless there is sufficient evidence favoring the
> nonmoving party for a jury to return a verdict for that party. If the [nonmovant's]
> evidence is merely colorable, or is not significantly probative, summary judgment
> may be granted.

Anderson, 477 U.S. at 249-50. "No genuine issue of material fact exists when the 'record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" Michigan Paytel Joint Venture v. City of Detroit, 287 F.3d 527, 534 (6th Cir. 2002)(quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). However, the mere existence of a scintilla of evidence in support of the non-movant is not sufficient; there must be sufficient evidence upon which a jury could reasonably find for the non-movant. Anderson, 477 U.S. at 252.

IV.    ANALYSIS

   A.    Plaintiff's Trespass Claim

4

D&T alleges that McVickers' shared use of eleven parking spaces constitutes a "trespass onto its easement rights." Compl., at para. 33. It also asserts that there has been an interference with its easement by the destruction of parking spaces which were unilaterally removed from the Costco parking lot. In essence, D&T is suing McVickers for trespassing on land that the landowner granted McVickers permission to use.

"An easement is the right to use the land of another for a specified purpose." <u>Schadewald v Brule</u>, 570 N.W.2d 788, 794 (Mich. Ct. App. 1997). The owner of an easement enjoys possession to the extent necessary for enjoyment of the rights conferred by the easement. <u>Id</u>., at 794-95. However, "the owner of the easement cannot prevent another, even a trespasser, from using the land, if his use does not impede the free exercise of the right of passage." <u>Murphy Chair Co. v. American Radiator Co.</u>, 137 N.W. 791, 796 (Mich. 1912), <u>Greve v. Caron</u>, 206 N.W. 334, 335 (Mich. 1925). "Recovery for trespass to land in Michigan is available only upon proof of an unauthorized direct or immediate intrusion of a physical, tangible object onto land *over which the plaintiff has a right of exclusive possession*." <u>Adams v. Cleveland-Cliffs Iron Co</u>, 602 N.W.2d 215, 222 (Mich. Ct. App. 1999) (emphasis added), <u>McDowell v. City of Detroit</u>, 690 N.W.2d 513, 523 (Mich. Ct. App. 2004). Because D&T does not have "exclusive possession" of the land, it cannot sue McVickers for trespassing upon Costco's parking lot. <u>Hadfield</u>, 422 N.W.2d at 210, <u>Adams</u>, 602 N.W.2d at 219, 222, <u>McDowell</u>, 690 N.W.2d at 523. Moreover, D&T has presented no evidence that its "right to a reasonably unobstructed passage at all times, and also such rights as are incident or necessary to the enjoyment of such right of passage" were at any time interfered with. <u>Murphy Chair</u>, 137 N.W. at 797. Accordingly, Plaintiff's trespass claim is DISMISSED.

5

**B.      Plaintiff's Interference With an Easement/Quiet Enjoyment Claim**

D&T next asserts that McVickers interfered with rights to enjoy its easement because Costco unilaterally modified the REDA when it granted McVickers an easement and removed a small number of parking spaces pursuant to its agreement with McVickers.  D&T also contends that it has a superior title and right of access to the easement because of restrictive language in the REDA.

The language in the REDA D&T points to as the source of its superior rights is as follows: the "easement 'shall not be deemed granted for the benefit of any real property or Persons other than Parcel I, the Parcel I Owner, and its Permitees and such parking easement shall not be deemed to create any rights for the general public."  Pl.'s Resp. Br., at pp. 7.  D&T argues that McVickers is not a "permittee" or "owner" as defined in the REDA, and thus, is not entitled to access the easement.  This argument is untenable.  McVickers's right to access the parking lot is derived from a separate easement Costco granted to it in the REA.  Thus, its use of the parking does not interfere with D&T's rights under the REDA.  Moreover, the "exclusive language" highlighted by D&T only establishes that Costco defined the universe of people that could use the easement it granted to D&T; it did not waive Costco's ability to grant easements to other entities, or in any way restrict Costco's rights as the fee owner.  Therefore, McVickers's use of the lot does not run afoul of the REDA.

Likewise, the alteration of the parking spaces does not violate the REDA.  The REDA does not restrict the manner in which Costco must configure the parking spaces or obligate it to maintain a certain number of parking spaces.  Thus, D&T still has the same rights of access and use as it did before Costco granted an easement to McVickers and altered the lot configuration.

6

Even if the REDA did contain such obligations, McVickers is not a proper party to any claim that the REDA has been violated because it is not a party to that agreement, and thus, is not bound by any obligations or restrictions in that agreement.  Therefore, D&T's argument that its easement is anything other than a non-exclusive easement, that it has superior title or right of access, or that McVickers has violated the REDA is without merit.

Next, the covenant of quiet enjoyment is breached only when the landlord "obstructs, interferes with, or takes away from the tenant in a substantial degree the beneficial use of the leasehold."  Slatterly v. Madiol, 668 NW2d 154, 164 (Mich. Ct. App. 2003).  D&T does not possess a leasehold interest, and is not suing the landowner.  Nor has it cited any authority that recognizes a claim against a fellow easement owner for breaching a covenant of quiet enjoyment. All the cases and secondary authority the Court has found illustrates one point: a claim that an express or implied covenant for quiet enjoyment was breached is premised upon contract law in the landlord-tenant relationship.  See 52A C.J.S. Landlord & Tenant § 737 (2006), 15 Williston on Contracts § 48:10 (4th ed.), 49 Am. Jur. 2d, Landlord and Tenant § 601, C. S. Parnell, Annotation, Breach of Covenant for Quiet Enjoyment in Lease, 41 A.L.R.2d 1414 (2006)(§ 18 Interference With Easements or Appurtenances of Leased Premises: "It appears to be quite generally agreed that an interference with the easements or appurtenances of the leased premises, such as the right to light, air, passage, sewage, water, etc., by the lessor, or someone claiming through him, may constitute a breach of the covenant of quiet enjoyment in a lease.").  Even if such a claim were recognized in this situation, D&T has presented no evidence that McVickers has substantially interfered with D&T's beneficial use of the easement.  See Choals v. Plummer, 90 N.W.2d 851 (Mich. 1958), Royal Oak Wholesale Co. v. Ford, 136 N.W.2d 765 (Mich. Ct.

App. 1965). An easement owner cannot sue another for interference with the easement if there is no evidence that the use impedes the free exercise of the rights granted in the easement. See Murphy Chair, 137 N.W. at 796. Thus, D&T has failed to establish that it can bring such a claim against McVickers, or that McVickers has obstructed, interfered, or taken away from its beneficial use of the easement to a substantial degree. Accordingly, Plaintiff's Interference With an Easement/Quiet Enjoyment Claim is DISMISSED.

### C.    Plaintiff's Nuisance Claim

In Count II of D&T's Complaint, it alleges that McVickers's violations of the restrictions set forth in the REDA constitute a nuisance. D&T asserts that the REDA prevents McVickers from using the easement because McVickers is not identified as a party entitled to use the easement, and that the grant of the REA was unjustified in light of the REDA. Pl.'s Resp. Br., at pp. 12.

The Michigan Supreme Court has described the following components of a private nuisance:

> According to the Restatement, an actor is subject to liability for private nuisance for a nontrepassory invasion of another's interest in the private use and enjoyment of land if (a) the other has property rights and privileges in respect to the use or enjoyment interfered with, (b) the invasion results in significant harm[,] (c) the actor's conduct is the legal cause of the invasion, and (d) the invasion is either (i) intentional and unreasonable, or (ii) unintentional and otherwise actionable under the rules governing liability for negligent, reckless, or ultrahazardous conduct.

Adkins v. Thomas Solvent Co., 487 N.W.2d 715, 720 (Mich. 1992)(citing 4 RESTATEMENT (SECOND) TORTS, §§ 821D-F). "To prevail in nuisance, a possessor of land must prove *significant harm* resulting from the defendant's *unreasonable interference* with the use or

8

enjoyment of the property." <u>Adams v. Cleveland-Cliffs Iron Co.</u>, 602 N.W.2d 215, 222 (Mich. Ct. App. 1999)(emphasis in original).

Traditionally, a nuisance claim is asserted "[w]here the possessor of land is menaced by noise, vibrations, or ambient dust, smoke, soot, or fumes, the possessory interest implicated is that of use and enjoyment, not exclusion . . . ." <u>Adams v. Cleveland-Cliffs Iron Co.</u>, 602 N.W.2d 215, 222 (Mich. Ct. App. 1999). D&T's nuisance claim is not premised on the type of non-trespassory invasion previously onsidered by the courts, but is more akin to a breach of contract claim. <u>See</u> <u>Choals</u>, 90 N.W.2d 851 (subsequent owner of property built grocery store that encroached upon a reserved easement), <u>Royal Oak Wholesale Co.</u>, 136 N.W.2d 765 (tenant sued landlord for breach of lease because subsequent owner prevented use of railroad spur). However, even if this were a traditional nuisance claim, it would not survive Defendant's motion because D&T does not identify how McVickers has obstructed its easement, and has presented no evidence that it has suffered *"significant harm* resulting from the defendant's *unreasonable interference* with the use or enjoyment of the property." <u>Adams</u>, 602 N.W.2d at 222(emphasis in original). The claim is DISMISSED.

**V.     CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary

Judgment is **GRANTED.  IT IS FURTHER ORDERED** that Plaintiff's Complaint is

**DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED.**

                                       s/Marianne O. Battani
                                       MARIANNE O. BATTANI
                                       UNITED STATES DISTRICT JUDGE

DATED: November 28, 2006

**CERTIFICATE OF SERVICE**

Copies of this Order were served upon counsel of record on this date by ordinary mail

and/or via the ECF Court System.

                                       s/Bernadette M. Thebolt
                                       DEPUTY CLERK